UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ROBERT D. DAVIS, ) <br> (Social Security No. XXX-XX-7187), ) <br> ) <br> Plaintiff, ) <br> ) <br> v.                                      ) <br> ) <br> MICHAEL J. ASTRUE, COMMISSIONER ) <br> OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | 3:09-cv-35-WGH-RLY |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 13) and an Order of Reference entered by Judge Richard L. Young on August 31, 2009 (Docket No. 18).

### I. Statement of the Case

Plaintiff, Robert D. Davis, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f).  This court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff applied for DIB and SSI on November 29, 2004, alleging disability since December 30, 2002. (R. 59-61, 421-23). The agency denied Plaintiff's application both initially and on reconsideration. (R. 42-43, 46-49). Plaintiff appeared and testified at a hearing before Administrative Law Judge William Hafer ("ALJ") on September 13, 2007. (R. 427-60). Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 427). On March 4, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform his past work. (R. 15-27). After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner. (R. 3-5). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on March 17, 2009, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

### A. Vocational Profile

Plaintiff was 47 years old at the time of the ALJ's decision and had an eighth-grade education. (R. 59, 432). His past relevant work experience included work as a hay bailer, materials handler, and cleaner. (R. 26-27).

### B. Medical Evidence

#### 1. Plaintiff's Physical Impairments

On November 6, 2001, Plaintiff went to the emergency room after injuring his back while lifting at work; x-rays showed degenerative changes at L4-L5. (R. 335, 337). Plaintiff underwent surgery on January 27, 2003, which revealed

disc herniation that compressed his nerve root. (R. 383). After surgery, on March 17, 2003, his surgeon, Harold Cannon, M.D., said he could lift up to 50 pounds; by July 31, 2003, Plaintiff had complete resolution of his radicular symptoms. (R. 388-90).

On October 29, 2004, Plaintiff visited the Deaconess Hospital Emergency Room for complaints of neck pain and headache. (R. 277-78). Plaintiff reported ongoing headaches for a year since a motor vehicle accident which required back surgery. (R. 277). Plaintiff was neurologically intact, had no musculoskeletal tenderness along the cervical spine, and had symptoms consistent with tension headaches. (R. 278). A CT scan of Plaintiff's brain was normal. (R. 279).

On February 5, 2005, Sandeep Kalra, M.D., examined Plaintiff for the State agency. (R. 331–33). Plaintiff was alleging disability due to chronic back pain, a history of a ruptured disc and a weak liver. (R. 331). Plaintiff complained of a constant low back pain that radiates into his leg. He was currently using no physical therapy and had not done so for over a year. (R. 331). Plaintiff had a normal gait and did not use an assistive device to get around. He was able to get on and off of the exam table without any assistance or pain. (R. 332). Plaintiff had normal range of motion in all joints. Dr. Kalra reported normal strength, no atrophy, intact reflexes, and normal straight-leg raising. (R. 332).

From 2005 to 2007, Plaintiff complained periodically to nurses at Echo Community Health Care Clinic ("Echo") of back pain. (R. 195–204, 283).

Plaintiff was seen at Echo five times in 2005. (R. 282). It is difficult to determine what the Echo notes indicate, but there are complaints of back pain during both the June and August visits (R. 282-83), and radiology reports from Deaconess hospital on June 29, 2005, show degenerative changes in the lumbar spine most pronounced at L4-5. (R. 280, 290). Another radiological report on September 16, 2005, indicated degenerative disc changes at C5-C6, and curvature of the lower cervical spine to the left; the diagnosis was moderate cervical spondylosis at C5-C6. (R. 230).

Visits to Echo in 2006 deal primarily with depression issues (R. 224) and kidney stones (R. 205, 213). There are complaints of general back pain (R. 201, 203), but despite indications of other types of treatment, there is no specific referral for significant back pain treatment. A CT scan of Plaintiff's cervical spine on October 23, 2006, revealed moderate discogenic degenerative disease at C5-C6. (R. 194).

Visits to Echo in 2007 begin in January with severe back pain (R. 199) and continue in April with indications of numbness in the right leg (R. 197).

### 2. Plaintiff's Mental Impairments

On March 22, 2005, Jeffrey Gray, Ph.D., examined Plaintiff for the State agency. (R. 324–28). Plaintiff's affect was normal and remained stable. (R. 324). His attention span and concentration were mildly impaired. (R. 324). Plaintiff's verbal expression was mildly impaired. (R. 325). IQ testing revealed that Plaintiff was in "the lower end of the borderline range." (R. 325). Dr. Gray

opined that Plaintiff did not have a mental impairment (other than Borderline Intellectual Functioning ("BIF")). Due to BIF, Dr. Gray limited Plaintiff to simple, repetitive one, two, or three-step tasks that do not require strenuous speed, quotas, or frequent shifts. Dr. Gray noted that Plaintiff reported some difficulties with consistency due to physical problems. He also noted Plaintiff would have "a great deal of difficulty with problem solving." (R. 327). Dr. Gray assessed a GAF of 60.[1] (R. 327).

Plaintiff was later evaluated on October 25, 2005, at Southwestern Indiana Mental Health Center by Larry Rowland, a social worker. (R. 246–48). Mr. Rowland opined that Plaintiff was likely mildly mentally retarded, and he diagnosed polysubstance dependance in sustained full remission, depression, anxiety, and rule-out intermittent explosive disorder. (R. 246-47). Mr. Rowland rated Plaintiff's GAF at 70, indicating mild symptoms or functional limitations. (R. 248). Mr. Rowland saw Plaintiff monthly for about six months, and then retired and transferred him to group therapy. (R. 233–46). During the six months that he treated Plaintiff, Mr. Rowland repeatedly noted that his mental status was improved. (R. 233–46).

On February 20, 2007, James Given, M.D., examined Plaintiff at Southwestern Indiana Mental Health Center. (R. 183–85). Dr. Given indicated that Plaintiff had a history of substance abuse and possible cognitive disorder.

---

[1] A GAF score of 51-60 indicates moderate symptoms or moderate difficulty with social, occupational, or school functioning.

(R. 183). Plaintiff alleged that he could not keep a job for more than two to three weeks because of problems stemming from head trauma; Plaintiff reported memory problems, difficulty with his temper, and problems with comprehending orders. (R. 183). Plaintiff reported one attempt at suicide when he cut his arm. Dr. Given noted that Plaintiff did not interact in a manner consistent with an Anti Social Personality Disorder. He recommended that Plaintiff continue therapy. (R. 185).

### 3. State Agency Review

On July 16, 2005, R. Fife, M.D., reviewed the record for the State agency and found that Plaintiff could perform medium work. (R. 315-21). Dr. Corcoran concurred with this assessment. (R. 321).

On July 16, 2005, State agency psychologist, J. Gange, Ph.D., performed a Mental Residual Functional Capacity Assessment. (R. 296-98). Plaintiff was moderately limited in the ability to understand and remember detailed instructions as well as the ability to carry out detailed instructions. (R. 296). Plaintiff could perform simple, repetitive tasks outside of a highly supportive environment. (R. 298). J. Pressner, Ph.D., concurred with this assessment. (R. 298).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to

preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that Plaintiff was insured for DIB through December 31, 2009.  (R. 17).  The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had six impairments that are classified as severe:  a history of kidney stones; lumbar spine degenerative disc disease that is most pronounced at L4-L5; cervical spondylosis, primarily at C5-C6; depression; testing consistent with BIF; and anxiety.  (R. 17).  The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18).  The ALJ then found that Plaintiff retained the following RFC:  lift and carry 50 pounds occasionally and 25 pounds frequently; stand, walk, and sit for six hours in an eight-hour workday; stoop, kneel, crouch, crawl, and climb stairs frequently; and cannot perform work involving complex detailed tasks.  (R. 20).  The ALJ determined that, based on this RFC, Plaintiff could perform his past work as a

hay bailer, materials handler, and cleaner. (R. 26). The ALJ, therefore, concluded that Plaintiff was not under a disability. (R. 27).

## VI.  Issues

Plaintiff has raised four issues. The issues are as follows:

1. Whether Plaintiff's physical impairments met Listing 1.04.

2. Whether Plaintiff's mental impairments met a listing.

3. Whether the ALJ's mental RFC finding failed to adopt the findings of Dr. Gray.

4. Whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

**Issue 1:   Whether Plaintiff's physical impairments met Listing 1.04.**

Plaintiff's first argument is that his back impairment met Listing 1.04, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);]
>
> or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  In order for an individual to be disabled under a particular listing, his impairment must meet each distinct element within the listing.  *Rice v. Barnhart,* 384 F.3d 363, 369 (7th Cir. 2004).  In this case, since Plaintiff's surgery on March 17, 2003, objective testing has failed to demonstrate that Plaintiff's back impairment meets the elements of Listing 1.04.  Studies of Plaintiff's back in September 2005 and October 2006 do not indicate any nerve root compromise.  (R. 194, 230).  Additionally, an exam of Plaintiff conducted in February 2005 clearly indicated that Plaintiff does not meet the A criteria of Listing 1.04 because there was no evidence of atrophy and Plaintiff's straight-leg testing was normal.  (R. 332).

Plaintiff argues that his back condition worsened as reflected by treatment at Echo between August 2006 and June 2007.  (R. 195-255).  These records do indicate occasions in which Plaintiff complained of low back pain.  (R. 196-97, 199, 201).  Some of these records are accompanied by reference to some specific signs of an objective nature that raise the issue of whether Listing 1.04 might be

met. For example, there are references to "severe back pain tearful [with] pain" (R. 199), restrictions on range of motion (R. 196, 200), and numbness in the right leg (R. 197, 203). Though apparently not related to the low back, there is also reference to "moderate cervical spondylosis C5-C6" (R. 230) or "moderate discogenic degenerative disease at C5-C6" (R. 194).

    This court cannot find any specific reference made to these Echo notes in the ALJ's decision or discussion of the listing found in his opinion on page 18 of the transcript. The failure to discuss these notes at all does raise a concern about the thoroughness of the review. However, absent from the Echo notes is any objective medical evidence of a positive straight-leg raising test or reflex loss or muscle atrophy. The reference to numbness first occurs in September 2006, is again reflected in notes from April 2007, but does not appear in records before this. Plaintiff did reference continued numbness during his testimony at the hearing before the ALJ, but indicated that his most severe pain was in his neck. (R. 440). It is, therefore, difficult to conclude that these records clearly evidence the existence of a condition that meets the A criteria of Listing 1.04. While it would have been better for the ALJ to have more explicitly discussed these records, this court can trace the path of the ALJ's reasoning and finds no error of law in the ALJ's failure to find that Plaintiff's impairment met the A criteria of Listing 1.04.

    Plaintiff has also not put forth any evidence that his impairment met the B or C criteria of Listing 1.04. For these reasons, Plaintiff has failed to carry his

burden of demonstrating that he met Listing 1.04, and this portion of the ALJ's decision is supported by substantial evidence.

**Issue 2:     Whether Plaintiff's mental impairments met a listing.**

Additionally, Plaintiff finds fault in the ALJ's analysis of his mental impairment. Plaintiff alleges that the ALJ committed error by not concluding that Plaintiff's impairment met any of the listings in 12.00 for mental disorders. However, the ALJ in this case thoroughly analyzed the reasons why Plaintiff did not meet Listings 12.02, 12.04, 12.05, or 12.06. (R. 18-20). The ALJ relied on the opinions of State agency psychologists Dr. Gange and Dr. Pressner, who found Plaintiff moderately limited in his ability to understand and remember detailed instructions as well as the ability to carry out detailed instructions. (R. 296-98). They also found that Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 310). These findings are not inconsistent with the findings of Dr. Gray, who examined Plaintiff in March 2005.

The reports of Dr. Gray and Mr. Rowland describe no more than mild to moderate impairments, and neither suggest that Plaintiff meets Listings 12.02, 12.04, 12.05, or 12.06. No doctors have opined that Plaintiff suffered episodes of decompensation or had the requisite number of marked limitations noted in these listings; the actual evidence concerning Plaintiff's mental impairment reveals much less severe restrictions than those required to meet any of these

listings.  The ALJ did spend a considerable portion of his opinion analyzing the mental health issues.  (*See* R. 18, 20).  This extensive discussion convinces the court that the ALJ reasonably assessed Plaintiff's mental condition.  Because Plaintiff has failed to point to specific medical evidence to support a finding that Plaintiff met any of these listings, the court concludes that this portion of the ALJ's decision is supported by substantial evidence and must be affirmed.

**Issue 3:     Whether the ALJ's mental RFC finding failed to adopt the findings of Dr. Gray.**

Next, Plaintiff argues that the ALJ's decision is flawed because it fails to adopt the findings of Dr. Gray.  As noted above, Dr. Gray opined that Plaintiff should be limited to simple, repetitive tasks that are one, two, or three steps, and do not require strenuous speed, or quotas, or frequent shifts.  (R. 327).  The ALJ adopted the findings of Dr. Gray.  (R. 26).  The ALJ then found, in his RFC assessment, that Plaintiff could not perform work involving complex or detailed tasks.  (R. 20).  Plaintiff alleges that this RFC was not consistent with Dr. Gray's findings.  However, this amounts to a distinction without a difference.  Explaining that an individual is limited to no complex or detailed tasks or is limited to simple repetitive tasks is essentially the same limitations.  And, the ALJ did specifically ask the VE whether an individual who was limited to simple repetitive tasks with no speed requirements or quotas could perform Plaintiff's past relevant work.  (R. 457).  The VE testified that someone with this RFC could perform Plaintiff's past relevant work.  Therefore, by asking the proper

hypothetical question that incorporated Dr. Gray's opinions, the ALJ did not commit error. *See Shramek v. Apfel,* 226 F.3d 809, 814-15 (7th Cir. 2000).

**Issue 4:    Whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff also argues that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence. However, the ALJ took into consideration Plaintiff's back impairment and the opinions of Dr. Cannon and limited Plaintiff to lifting no more than 50 pounds occasionally and 25 pounds frequently. This is consistent with the findings of Dr. Kalra, who reported normal strength, no atrophy, intact reflexes, and normal straight-leg raising. (R. 332). The ALJ also took into account the opinions of Dr. Gray, who opined that Plaintiff should be limited to simple, repetitive one, two, or three-step tasks that do not require strenuous speed, quotas, or frequent shifts. (R. 327). The ALJ clearly adopted these limitations in his question to the VE. (R. 456-57). No other doctors have opined that Plaintiff has a more limited mental or physical RFC than that provided by the ALJ. Hence, the ALJ's decision is supported by substantial evidence, and his RFC findings are affirmed.

### VII.  Conclusion

The ALJ's decision is supported by substantial evidence. The ALJ did adopt the findings of Dr. Gray concerning Plaintiff's mental RFC. Additionally, Plaintiff has failed to demonstrate that his back impairment met Listing 1.04 or that his mental impairment satisfied all of the criteria of any of the mental

impairment listings.  Finally, the ALJ's RFC findings are well supported by the objective medical evidence.  The decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

    **SO ORDERED** this 9th day of March, 2010.

                                                     William G. Hussmann, Jr.
                                                   United States Magistrate Judge
                                                   Southern District of Indiana

**Electronic copies to:**

Eric Joseph Yocum
eric_yocum@msn.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov